ANTHONY ALBANESE *vs.* LOUISE CASHMAN, *Admx. et al.*

MAY 16, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

476

BAKER, J. This cause is before this court on an appeal by the complainant from the entry of a decree in the superior court providing that the claims of certain specified creditors of a partnership, the assets of which are in the hands of a

permanent receiver, heretofore appointed in this cause by said superior court, be paid by him out of receivership funds, after the payment of administration fees and expenses.

The decree in question was entered in the superior court following a hearing by a justice thereof, after due notice to interested parties, of a petition filed by the receiver that the said court pass upon creditors' claims which he had disallowed. The claims ordered paid by such decree out of receivership funds, before any division thereof, totaled $1001.97. Another claim amounting to $91.94 was ordered paid out of funds that might remain in the receiver's possession for one of the respondents after the payment of the fees, expenses and claims previously mentioned. The property of the partnership had been previously sold by the permanent receiver for $1500. Of this sum $1488 is now in his hands.

The complainant was one of the partners. His contention is that he is entitled to one half of the fund remaining in the possession of the permanent receiver after the fees and expenses of administration and a few small bills of certain creditors are paid. The creditors, however, maintain that the decree appealed from should be sustained. No question is raised in this cause as to the validity or the amounts of the claims of said creditors. The decree appealed from, although interlocutory, in our opinion had such elements of finality, since it provided for the disposition of substantially the entire fund in the receiver's hands, as to permit an immediate appeal from its entry. *McAuslan* v. *McAuslan*, 34 R. I. 462.

The following material facts appear in evidence. Prior to March 6, 1939 one Henry T. Cashman owned and operated in East Providence a liquor business known as Cashman's Bar under a Class C license which had been issued to him. On that date he sold to Thomas K. Fisher by a bill of sale said entire business including license, fixtures and stock. In that bill of sale the consideration was described as being $453.14, but Fisher also expressly agreed and assumed in

said instrument to pay six specific obligations which were set out as to names and amounts in said bill of sale, and stated therein to be then owed by Henry T. Cashman. These bills, so assumed by Fisher, amounted in all to $944.86, which sum together with the previously-mentioned consideration totaled $1398.

From March 6, 1939 until April 12, 1939 Fisher was in sole possession of the business. On the date last mentioned he sold by a bill of sale a one half interest in the business to the complainant for a cash consideration of $700, which was paid. At this same time Fisher apparently had an oral understanding with the brother of Henry T. Cashman, one David Cashman, that the latter would later purchase the other one half interest when he became financially able to do so. However, no bill of sale or transfer of any rights or property was ever executed by Fisher covering the one half interest still retained by him, and he never received any payment therefor from David Cashman.

On April 12, 1939 the complainant and David Cashman, the latter under some arrangement with Fisher as above referred to, took possession of the business and operated it together until May 9, 1939 when David Cashman died. In the meantime, the liquor license had remained in the name of Henry T. Cashman until May 2, 1939, when it was transferred to David Cashman. The respondent Louise Cashman was duly appointed administratrix of the latter's estate.

Following the death of David Cashman the complainant operated the business alone until May 18, 1939. The present bill of complaint was filed May 25, 1939 in order to preserve the assets of the business and to have the rights of interested parties determined. On that date Edmund J. Kelly, a member of the bar, was appointed by the superior court temporary receiver of the business, and on June 21, 1939, permanent receiver. On July 25, 1939 he sold all its assets.

Claims were thereupon filed by creditors of the business, and later the superior court entered a decree appointing said permanent receiver a special master to make findings of fact as to all such claims and as to "all agreements, Bills of Sale, and any other documents bearing on the ownership of Cashman's Bar." As master he was authorized by said decree to hold hearings, summon witnesses and question them under oath. Pursuant to such authority, and after notice to interested parties, the master held two hearings and examined several witnesses, who had been duly sworn. Testimony so taken was transcribed and is filed in this cause.

Thereafter he filed a report containing certain findings as to claims of creditors and dividing said claims into groups according to certain dates, *viz.*, those claims which were incurred prior to March 5, 1939, those incurred from March 6 to April 11, 1939, and those incurred subsequent to said last-mentioned date. These findings are apparently not questioned. Later, as hereinbefore set out, after a hearing in the superior court on a petition filed by the receiver concerning the allowance and payment of such claims, the decree now before us on the complainant's appeal was entered in the superior court.

The property passing to the complainant under the bill of sale from Fisher, dated April 12, 1939 and hereinbefore referred to, was described therein as follows: "A one-half interest in one Class C Saloon, including license, for the current year, together with all fixtures therein. The present stock in trade including liquors is not included in this sale." This bill of sale also contained a covenant that the goods and chattels sold were free from all encumbrances except as to six certain bills, the names of the creditors and the amounts being specifically set out, said six bills being exactly the same as those contained in the bill of sale from Henry T. Cashman to Fisher, dated March 6, 1939, and assumed therein by the latter.

After due consideration of the questions of law and of fact raised by the record before us, we are of the opinion that the decree from which the complainant appealed was erroneously entered. It is clear that Fisher, when he purchased the business from Henry T. Cashman, by the very terms of the bill of sale, expressly assumed and agreed to pay six specific bills which had been incurred by the latter, thereby making himself personally liable for the payment of such bills. Plainly this assumption was part of the consideration for the sale. Fisher, of course, was also obligated to pay the debts which he incurred while operating the business alone between March 6 and April 12, 1939.

On the last-named date, as above set out, Fisher sold a one half interest in the business to the complainant. From that time on, under the facts appearing in evidence, the complainant and David Cashman apparently conducted the business until the latter's death. It is undisputed, however, that Fisher never actually parted with the other one half interest, or received any consideration therefor from David Cashman or from anyone else, although, as before mentioned, Fisher and David Cashman had some understanding, apparently acceptable to the complainant, which contemplated an ultimate transfer of said remaining one half interest to David Cashman. This transaction, however, was never completed by reason of the latter's death.

In purchasing the one half interest in the business, as between himself and Fisher, the complainant never made himself personally liable for any of the obligations incurred by or assumed by Fisher. There was no provision in the bill of sale from the latter to the complainant whereby he agreed to pay or assume such obligations. Further, the evidence would tend to show that the business in question was fairly worth only about $1400 or $1500. This fact serves to lend probability and reasonableness to the complainant's contention that his payment of $700 in cash to Fisher was in full payment for a clear one half interest, and that it was

his, the complainant's, understanding, when the transaction between them was consummated, that Fisher was to use said $700 in discharging, as far as possible, his (Fisher's) obligations arising out of said business.

In addition, the attorney, who drew the bill of sale from Fisher to the complainant and attended to its execution, testified as follows concerning the reference in said instrument to the previous outstanding obligations and as to whether or not the complainant was to assume their payment: A. ... he came in for the transfer to Mr. Albanese, I told him he ought to include that for his own protection because the bills were outstanding, those bills were outstanding and he shouldn't guarantee clear title for his own protection to put those in; they were put in at my suggestion. Q. The purpose of putting those in was to show that those bills were outstanding at the time, which was a fact? A. That's right. Q. But it was not intended, of course, that Mr. Albanese was assuming those bills or was supposed to pay them, was it? A. It was either discussed before or after the papers were drawn and at that time Mr. Albanese was to get a half interest free and clear of these debts, he was not to assume any portion of them. Q. And the only purpose of putting in these bills was to show they were outstanding, which was a fact, but with no intention that Mr. Albanese was to assume any part of those bills, that's correct, isn't it? A. That's correct. ... Q. Was it part of the understanding Mr. Curry, with this $700 collected from Albanese and the $700 David Cashman was to pay, Mr. Fisher was to take care of all these bills? A. That's right."

As to the creditors who are parties herein and whose obligations were incurred prior to April 12, 1939, it is difficult for us to perceive what enforceable claim they have against the complainant personally. They never had any dealings with him; never sold goods to him; and never advanced credit on the strength of his being a partner in the business,

since their obligations were incurred before he purchased an interest therein.

In our opinion, the statement in the bill of sale from Fisher to the complainant that the property sold which, incidentally, included, as above stated, merely an interest in the license and in the fixtures and did not cover the stock of liquors, was free from all encumbrances except as to six specific bills, is not sufficient, in view of all the circumstances, to be of any aid to the said creditors here. The intent and purpose of that provision in the bill of sale may, on its face, have been open to different interpretations, but it was explained, as above set out, by the attorney who drew it, and that explanation was not directly questioned.

While such bill of sale refers to the said obligations of certain specific creditors as encumbrances on the goods sold to the complainant, there is no evidence in the cause to show how such encumbrances, if any existed, arose or were created. It did not appear in evidence that there was any lien, attachment, mortgage, or other encumbrance of any kind in favor of the creditors in question on the property passing under the said bill of sale. It merely appeared that Fisher had previously made himself personally liable for such obligations when he purchased the business from Henry T. Cashman. We conclude, therefore, that under the facts and circumstances in the instant cause, the complainant was not personally liable to pay the bills of the creditors in question, and that no encumbrance for their benefit on the property passing under the bill of sale from Fisher to the complainant was proved.

However, as hereinbefore indicated, the evidence showed that Fisher, when he sold to the complainant by the bill of sale of April 12, 1939 a one half interest in the business, expressly excluded from that sale the liquors in the saloon in question, thereby retaining title in himself to all such liquors. His creditors, therefore, as between themselves and the complainant, had a right to look to such liquors, or to the pro-

ceeds therefrom, in case they were sold during the conduct of the business, for the satisfaction of their claims.

The reasonable inference from the evidence is that such liquors were so sold. The complainant testified, in substance, that when the permanent receiver sold the assets of the business on July 25, 1939 there was only about $20 worth of liquor in the latter's possession. No claims of any consequence for the purchase of liquor for the business between April 12 and May 18, 1939 were filed with the receiver. Fisher testified that when he sold the one half interest to the complainant on April 12, 1939 the liquors in the saloon were worth $153, and that an inventory showing that amount had been made just prior to the sale. The complainant attacked this figure, claiming that the liquors in the saloon when he purchased his one half interest were not of that value but were of a much lower value. However, in his testimony he named no figure in that connection. On this state of the evidence, we find that the liquors in question were worth $153, and that so much of the fund in the hands of the permanent receiver represents the value of such liquors. There is no evidence in the cause that Fisher was in any way paid or otherwise reimbursed for their value.

The creditors have also argued that by reason of the provisions of general laws 1938, chapter 483, the bill of sale from Fisher to the complainant was ineffectual to pass the title to the property described therein. The contention of the creditors relates to the necessity, under the statute, of the giving of notice by the vendee to the vendor's creditors at least five days before the actual transfer of the property involved, in order to prevent such transfer from being void as to creditors. See *Burt* v. *Modern Dye & Rug Works, Inc.,* 48 R. I. 490; *Gaspee Cab Co.* v. *McGovern,* 51 R. I. 247. No such notice was given by the complainant.

In our opinion, chap. 483, *supra,* does not apply to the situation disclosed by the evidence in the instant cause, and

the complainant was not required to give any notice to Fisher's creditors of the sale on April 12, 1939. The statute in question applies to "the transfer of the major part in value of the whole of a stock of merchandise and fixtures, or merchandise or fixtures, . . . ." In the instant cause the complainant had purchased from Fisher only a one half interest in the business, including the license and the fixtures, but expressly exempting all the stock of liquors. This clearly did not constitute a transfer of the major part in value of the whole of a stock of merchandise or fixtures. In our judgment, therefore, the complainant on April 12, 1939 obtained a clear title to a one half interest in the property described as passing to him under the bill of sale from Fisher.

In view of the above holdings, we find that, after the payment by the permanent receiver of such fees and expenses of administration as may be allowed by the court, the fees and expenses of the said master, and such obligations of creditors as the master found were incurred in operating the business between April 12 and May 25, 1939, including a reasonable amount to the owner of the property occupied by such business for the use of such property between the said dates, the permanent receiver shall divide the fund then remaining in his possession into two parts, one of which shall be greater than the other by the sum of $153. This last-named figure represents the value of the liquor owned by Fisher as hereinbefore discussed.

The smaller of the two said parts the receiver shall pay over to the complainant. The other of said parts represents the interest of Fisher in the business. In view of the circumstances appearing in evidence, no claim is being made to this part by the administratrix of the estate of David Cashman. Also, Fisher has filed no brief nor made any argument in this proceeding, is not asking that such part be paid to him, and apparently does not object to having it paid to his creditors on account of the obligations in question. The

larger, therefore, of such two parts shall be applied by the receiver *pro rata* to the payment of the creditors' obligations assumed and incurred by Fisher because of his purchase and operation of said business.

The complainant's appeal is sustained, the decree appealed from is reversed, and on June 2, 1941 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Judah C. Semonoff,* for complainant.

*Herman J. Aisenberg, Raphael Vicario,* for creditors.

*Edmund J. Kelly,* Receiver.